IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



BLUESTONE INNOVATIONS, LLC,

        Plaintiff,

v.                                        Civil Action No. 2:12cv503-HCM-LRL

LG ELECTRONICS, INC. et al,

        Defendants.


BLUESTONE INNOVATIONS, LLC,

        Plaintiff,

v.                                        Civil Action No. 2:12cv510-HCM-DEM

ACER, INC. et al,

        Defendants.


BLUESTONE INNOVATIONS, LLC,

        Plaintiff,

v.                                      Civil Action No. 2:12cv532-HCM-LRL

VIZIO, INC.,

        Defendant.


BLUESTONE INNOVATIONS, LLC,

        Plaintiff,

v.                                      Civil Action No. 2:12cv545-HCM-LRL

BEST BUY CO., INC. et al,

        Defendants.

## OPINION AND ORDER

All four of the captioned cases are patent infringement actions brought by the same plaintiff regarding the same technology. This particular matter is before the Court on Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.'s (collectively, "LGE") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), Doc. 73, and Defendants Acer Inc. and Acer America Corporation's (collectively, "Acer") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), Doc. 81. LGE's Motion has been joined by Defendant VIZIO, Inc. ("VIZIO") and by Defendants Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC (collectively, "Best Buy"). Docs. 76, 79. Because all four cases have been consolidated for pretrial purposes, see Doc. 11, and all Defendants seek transfer to the Northern District of California, the Court has considered the Motions and Joinders together. On March 25, 2013, the Court convened a hearing and ruled from the bench. The Court **GRANTED** Defendants' Motions and now issues this Opinion and Order setting forth the reasons for its ruling in further detail.

## I. BACKGROUND

### A. The Patent

On December 19, 2000, the United States Patent and Trademark Office ("USPTO") issued Patent No. 6,163,557 (the "Patent" or the "'557 Patent").[1] The listed inventors were Clarence J. Donnrowicz, Linda T. Romano, and David. P. Bour (collectively, "Inventors") of Xerox Palo Alto Research Center ("PARC"). Doc. 1 ("Compl."); see also Doc. 73 at 5; Pat. No. '557.[2] PARC is located in Palo Alto, California, within the Northern District of California. Id. The Inventors reside within the Northern District of California. Doc. 73 at 9, Ex. U. Upon issuance, the Patent was assigned to Xerox Corporation of Stamford, Connecticut. Doc. 81, Ex.

---

[1] The Patent will be referred to as "Pat. No. '557" in citations.
[2] All citations to the docket are to the docket in the lead case, Civil Case No. 2:12cv503, unless otherwise noted.

J. The Patent was eventually acquired by Bluestone Innovations Holdings, LP, on May 25, 2010, and immediately assigned to Bluestone Innovations Texas, LLC. Id. Finally, on September 4, 2012, the Patent was assigned to Bluestone Innovations, LLC ("Plaintiff"). Id. The Patent is "subject to an exclusive field of use license held by a third party for any Optical Media Storage Device or Component." Compl. ¶ 8.[3]

The Patent covers an invention related to light emitting diodes ("LEDs"). Pat. No. '557.[4] Plaintiff seeks to enforce the Patent against Acer, Best Buy, LGE, and VIZIO (collectively, "Defendants"), claiming that certain televisions and monitors that they sell or manufacture, which utilize LEDs, infringe the Patent. See, e.g., Compl. ¶ 10.

### B. Similar Litigation

Plaintiff is also suing LED manufacturers for infringing the '557 Patent in the Northern District of California. See Bluestone Innovations LLC v. Epistar Corp. et al., Case No. 3:12cv-00059-SI (N.D. Cal. filed May 26, 2010) (the "Related Litigation"). While the case was initially brought against multiple defendants, only two remain: Nichia Corporation and Nichia America Corporation (collectively, "Nichia"). Id. The parties have just completed their first case management conference and are in the early stages of discovery. Id.

### C. The Parties

#### *1. Bluestone Innovations, LLC*

Since 2009, Plaintiff has been a Virginia limited liability company with its office in Reston, Virginia, where it employs five people. While Plaintiff has created other corporate entities solely for the purpose of litigation in Texas and Florida, it appears that Plaintiff is

---

[3] This license appears to be the subject of a standing dispute in a related case. See infra Section III, B, 3.
[4] At this preliminary stage, no statement about what the Patent covers is binding on the Court.

3

legitimately at home in Virginia. Compl. ¶ 1; see Doc. 90 at 3.[5] As far as ties to the Patent, Plaintiff has only been the assignee of the Patent since September 4, 2012, a week before filing the Complaints in these cases.[6] See Doc. 81, Ex. J; see, generally, Compl. Bluestone Innovations Texas, LLC, a Texas entity affiliated with Plaintiff, held the patent for over two years prior to Plaintiff's becoming the assignee. Id.

### 2. Defendants[7]

All Defendants are either American companies, or alien parents of American companies, that sell, distribute, and market consumer electronic devices in the United States. Acer's American entity is a California corporation with its principal place of business in San Jose, California, within the Northern District of California; Acer's alien parent entity is a Taiwanese corporation with its principal place of business in Hsiehih, Taiwan. Best Buy is composed of three entities: two Minnesota corporations and one Virginia limited partnership; all three entities have their principal places of business in Richfield, Minnesota. LGE's American entity is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey; LGE's alien parent entity is a South Korean corporation with its principal place of business in Seoul, South Korea. LGE also informs the Court that it maintains a sales office in the Northern District of California. Doc. 73 at 5. Finally, VIZIO is a California corporation having a principal place of business in Irvine, California, which falls within the Central District of California.

---

[5] Defendants, at various places in their memoranda, allege that Plaintiff's past creation of entities solely to claim a home for litigation should lead the Court to be skeptical of Plaintiff's current assertion that Virginia is its home. However, they carefully avoid actually arguing that Plaintiff was an entity created solely for that purpose here.
[6] After the Patent was assigned to Plaintiff, Plaintiff was substituted for the Texas entity that was the party in the Related Litigation. Doc. 81 at 4 n.2; Id., Ex. H.
[7] All the following information is taken from Plaintiff's Complaints unless otherwise noted.

4

### D. Procedural History

Plaintiff filed its Complaints against LGE and Best Buy on September 11, 2012, Docs. 1 of 2:12cv503 and 2:12cv545, and against Acer and VIZIO on September 13, 2012, Docs. 1 of 2:12cv510 and 2:12cv532.[8] In each Complaint, Plaintiff alleges that Defendants infringed the Patent with either televisions or computer monitors that are LED backlit. Id. On October 2, 2012, all four cases were consolidated before this Court. Doc. 11. LGE moved to transfer venue to the Northern District of California on January 24, 2013. Doc. 73. VIZIO and Best Buy joined LGE's Motion, and briefing was completed on February 11, 2013. See Docs. 74 (LGE's Mem. in Supp.), 75 (Request for Hearing), 76 (VIZIO's Joinder), 77 (Plaintiff's Opp'n), 79 (Best Buy's Joinder), and 80 (LGE's Reply in Supp.). Acer moved independently to transfer venue—also to the Northern District of California. Doc. 81. Briefing on Acer's Motion was completed on March 4, 2013. See Docs. 82 (Acer's Mem. in Supp.), 83 (Acer's Decl. in Support), 89 (Plaintiff's Opp'n), 90 (Acer's Reply in Supp.).

## II. LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[I]n considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994 (E.D. Va. 2011) (quoting Agilent Tech., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 324–25 (E.D. Va. 2004)). With respect to the second prong, "a district court typically considers: (1) plaintiff's choice of

---

[8] Plaintiff also brought suit against E&S International Enterprises, Inc., on September 13, 2012, but that case was voluntarily dismissed on November 28, 2012. See Doc. 63.

forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." Heinz Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citing JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). Although "[t]he decision whether to transfer an action under the statute is committed to the sound discretion of the district court . . . [t]he party seeking transfer bears the burden of proving that the circumstances of the case are strongly in favor of transfer." Id. (internal citations and quotations omitted) (emphasis in original).

### III. ANALYSIS

**A. Whether the Claims Might Have Been Brought in the Northern District of California**

Plaintiff admits that this action could have been brought against Acer and LGE in the Northern District of California. Doc. 77 at 4; Doc. 89 at 4. Further, Defendants argue that they sell the allegedly infringing products in the Northern District of California. See Doc. 73. Plaintiff does not dispute this. Accordingly, this prong of the test is satisfied.

**B. Whether Transfer is Convenient to Parties and Witnesses and in the Interest of Justice**

*1. Plaintiff's Choice of Forum*

"The plaintiff's choice of forum 'is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" Pragmatus AV, 769 F. Supp. 2d at 995 (quoting Heinz Kettler, 750 F. Supp. 2d at 667). But "[t]he level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." Id. If "a plaintiff [ ] prove[s] a legitimate connection to the [chosen] district," this factor "strongly weigh[s] against transfer." Id. (internal citations and quotations omitted); see also VS Techs.,

LLC v. Twitter, Inc., No. 2:11cv43, slip op. at 12-13 (E.D. Va. June 28, 2011) (Doc. 40) (unpublished) (finding that the plaintiff's "strong presence in the current venue" provided "legitimate and significant connections to the Eastern District of Virginia," which "weigh[ed] strongly against transfer").

Here, Plaintiff has existed in the Eastern District of Virginia since 2009, but has only held the Patent since September 4, 2012—roughly a week before filing suit. Plaintiff admits that it could be characterized as a non-practicing entity ("NPE")—a term used, sometimes pejoratively, to describe "an entity that 'does not research and develop new technology, but rather acquires patents, licenses the technology, and sues alleged infringers.'" Va. Innovation Scis., Inc. v. Samsung Elecs. Co., 2:12cv548, 2013 WL 831710 (E.D. Va. Mar. 6, 2013) (quoting Pragmatus, 769 F.Supp.2d at 995); see also Doc. 89 at 8, Doc. 82 at 4. In the context of a motion to transfer venue, NPE is simply used descriptively.

The parties disagree over what level of deference should be accorded to Plaintiff's choice of forum. Defendants assert that this Court has "often afforded little deference to [] home forum claims when the offices exist only to support patent enforcement activity." Doc. 82 at 9–10 (citing Pragmatus AV, 769 F. Supp. 2d at 995; Innovative Commc'ns Techs., Inc. v. Vivox, Inc., 2:12cv7, 2012 WL 4738979, at *4 (E.D. Va. Oct. 3, 2012)). Plaintiff distinguishes Pragmatus and Vivox by noting that the cases involved offices with one full-time employee or less which were either created for litigation or not truly the plaintiff's home offices. Defendants allege that Plaintiff has previously used this practice in Texas and Florida. See Doc. 82 at 9. Plaintiff does not deny this allegation, but argues that Virginia is legitimately its home. Defendants argue that, because of Plaintiff's history, Plaintiff's claim that the Eastern District of Virginia is home should be "viewed with skepticism." Doc. 90 at 3. Despite taking this position, Defendants do

not directly dispute that Virginia is Plaintiff's Home. Id. Plaintiff avers that it has existed here since 2009, and has five employees in its office. See Docs. 77, 89. The only evidence otherwise is Defendants assertion of "skepticism." Accordingly, the Court **FINDS** that Virginia is Plaintiff's home forum, but that finding does not end the question of the proper weight to allocate to Plaintiff's choice of forum.

While Pragmatus and Vivox are not factually on point, they stand for the proposition "that '[u]ltimately, 'the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) (quoting Quinton Instrument Co. v. Datascope Corp., No. 3:96cv160, 1996 U.S. Dist. LEXIS 22740 (E.D. Va. June 3, 1996)); see also Va. Innovation Scis., Inc., 2:12cv548, 2013 WL 831710, at *4 ("Here, [plaintiff] is a Virginia corporation that has continuously operated in this District since its formation in 2005. Thus, [this District] is [its] home forum. However, that fact alone is not controlling. The Court also considers the nexus between this District and the instant infringement action."); Gebr. Brasseler GmbH & Co. KG. v. Abrasive Tech., Inc., No. 1:08cv1246, 2009 WL 874513, at *2 (E.D.Va. Mar. 27, 2009) ("Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum.").

This Court has had two recent opportunities to apply the nexus concept. First, in comScore, Inc. v. Integral Ad Sci., Inc., this Court held that the plaintiff's "active utilization of the technology protected by its patents, as well as the production and sale of products based on that technology, all in this District," gave the Plaintiff "a significant, legitimate connection to the Eastern District of Virginia, which serve[d] to meaningfully connect the underlying causes of

8

action to this forum." --- F. Supp. 2d ---, 2:12cv351, 2013 WL 597492, at *7 (E.D. Va. Feb. 15, 2013). Second, in Va. Innovation Scis., Inc., this Court considered the forum choice of a plaintiff that had "not only researched and developed the patented technologies at issue in this District, but that [] continue[d] to research and develop various technologies here." 2:12cv548, 2013 WL 831710, at *4. The Court held that the plaintiff's choice of this District was "entitled to substantial weight in an enforcement action involving patented technologies" which the plaintiff had "researched, developed, and prosecuted" in this District. Id. at *5.

Here, the facts are easily distinguished. Plaintiff neither researched nor developed the technologies covered by the Patent. While the Patent was prosecuted by a law firm based in Virginia, the prosecution was at the direction of the California operations of a Connecticut corporation—not Plaintiff. Further, Plaintiff does not manufacture or sell any products based on the Patent in this District. Even though Plaintiff has been continuously in Virginia since its incorporation in 2009, it did not hold the Patent until a week before initiating this litigation. Previously, the Patent had been held by another of Plaintiff's entities in Dallas, Texas. Doc. 82, Ex. J. It had been held by that Texas entity since it was first acquired by an entity related to Plaintiff in May 25, 2010. Id. Accordingly, for all intents and purposes, there is no "nexus between this District and the instant infringement action." Va. Innovation Scis., Inc., 2:12cv548, 2013 WL 831710, at *4. The only connection between the underlying cause of action and this forum is Plaintiff's weeklong ownership of the Patent, and the fact that over ten years ago, the California operations of a Connecticut corporation hired a local law firm to prosecute the patent at the Alexandria, Virginia, office of the USPTO—the only office at that time. Thus, Plaintiff's choice of its home forum is accorded a form of hybrid deference: it receives some deference because this District is Plaintiff's home, but less deference than usual because of the lack of a

substantial connection between the Patent and this District. Accordingly, the Court **FINDS** that this factor weighs against transfer, but not substantially.[9]

### 2. *Convenience of the Parties*

"[C]onvenience to the parties . . . typically requires courts to consider factors such as the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" Heinz Kettler, 750 F. Supp. 2d at 668 (quoting Lycos, 499 F. Supp. 2d at 693). Courts in this District have noted that "[w]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever operates to justify transfer." Id. (quoting JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007)); see also Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1259 (E.D. Va. 1988)). Of course, the contrapositive is true: when Plaintiff's choice is allocated little weight, this factor becomes more important. Nonetheless, "even though a defendant may be inconvenienced by litigating an action in a plaintiff's home district, a transfer is not appropriate where it would likely only serve to 'shift the balance of inconvenience' from the plaintiff to the defendant." JTH Tax, 482 F. Supp. 2d at 738 (internal citations omitted); see also Heinz Kettler, 750 F. Supp. 2d at 668; Prod. Grp. Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004).

Here, Defendants all reside outside this District and all but Best Buy and LGE's sales office are closer to the Northern District of California. Significantly, LGE's and Acer's foreign headquarters are in Asia which is substantially more convenient to the Northern District of

---

[9] At this juncture it is worth noting that the movant's burden—showing that the balance of conveniences strongly favors transfer—is embodied in the typical entitlement of substantial weight to Plaintiff's choice of its home forum. Koh, 250 F. Supp. 2d at 633 ("To overcome [a plaintiff's] privilege [of forum selection], a movant 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought.' Therefore, the plaintiff's choice of forum is ordinarily entitled to substantial weight.") (second emphasis added). Where, as here, the Court has found that Plaintiff's choice of forum is not entitled to substantial weight, Defendants are well on their way to meeting their burden. A great weight tipping the scales against transfer has been removed. Defendants must further show only that the balance of the conveniences weighs sufficiently in favor of transfer to overcome the weight now afforded Plaintiff's choice.

10

California by reason both of distance and available air travel. See, e.g., Doc. 82, Exs. F, G (documenting that travel time is twenty-one to twenty-seven hours to this District and would require two or more transfers as opposed to direct flights of approximately eleven hours to the Northern District of California). Additionally, LGE and Acer assert that all the technical information about their allegedly infringing monitors and televisions is located in these Asian offices or in the Northern District of California. Doc. 80 at 5; Doc. 82 at 11. All of VIZIO's documents and employees are at its only location in the Central District of California—nearly six times closer to the Northern District of California than this District.

Plaintiff, its employees, and its documents are located in this District, but as will be detailed infra in the Section on the Interests of Justice, this case would likely be consolidated with a patent case that Plaintiff is already litigating concerning the same patent in the Northern District of California. Accordingly, any inconvenience the Plaintiff might suffer by having to litigate in a forum substantially more convenient for Defendants is greatly mitigated by the fact that Plaintiff is already litigating a case in that forum, concerning the same patent, with which these cases would likely be consolidated for pretrial purposes.

Accordingly, the Court **FINDS** that, taken as a whole, this factor weighs in favor of transfer to the Northern District of California

### 3. Convenience of Witnesses

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)." Samsung Elecs. Co., Ltd. V. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). However, "a distinction is drawn between party and non-party witnesses," and while party witnesses "are presumed to be more willing to testify in a different forum . . . there is no such presumption as to non-party witnesses." Id. (internal

citations omitted). As such, "[t]he convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue." Id. (citing Koh, 250 F. Supp. 2d at 637).

Further, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Id. (citing Koh, 250 F. Supp. 2d at 636); see also Sheet Metal Workers, 702 F. Supp. at 1257.[10] Although "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses [who] are located at or near the center of the allegedly infringing activities and that [are] involved in the design and manufacture of the accused products are material," Koh, 250 F. Supp. 2d at 636-37, "merely stating potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." Samsung Elecs. Co., 386 F. Supp. 2d at 719. Indeed, "the moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction," and "when the appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important." Id. (internal citations omitted). Nonetheless, the Court must consider the "cost of obtaining the attendance of witnesses." Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002); see also Landers v. Dawson Const. Plant, Ltd., 201 F.3d 436 (4th Cir. 1999) (same). Curing an inability to secure a key witness weighs heavily in favor of transfer. Making attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily. See Verizon, 203 F. Supp. 2d. at 623 (considering cost); Samsung

---

[10] Plaintiff asserts that this language requires affidavits. However, while affidavits are stronger evidence, "or otherwise" embraces such things as declarations, which are acceptable evidence for the present purposes. The important matter is "sufficient details" for the Court to weigh inconveniences.

12

Elecs. Co., 386 F. Supp. 2d at 719 (stating that if a witness can be incentivized to attend willingly, the "factor becomes less important" than it otherwise would be).

Moreover, "[w]itness convenience is not merely a battle of numbers favoring the party that can provide the longest list of witnesses that it plans to call," and "greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." Id. at 718-19 (internal citations omitted). "Although live testimony is the preferred mode of presenting evidence . . . [s]omewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical." Id. at 719 (citing Koh, 250 F. Supp. 2d at 637; Acterna, 129 F. Supp. 2d at 939).

Here, there are five groups of witnesses: (1) inventors; (2) prosecutors; (3) infringers; (4) enforcers; (5) and licensees. All three Inventors and their employer at the time of invention, PARC, are within the Northern District of California. Defendants assert that the Inventors are critical sources of testimony and "evidence regarding conception and reduction to practice of the claimed invention and known prior art at the time of invention." Doc. 82 at 6; Doc. 90 at 9. At the hearing, Plaintiff's counsel averred that he had spoken with the Inventors and that they were willing to testify in this District. This mitigates the Inventors' inconvenience, though it is indisputable that the cost of their attendance and the burden on their time would be significantly less in the Northern District of California, where they reside. Doc. 73, Exs. U, V.

The attorneys who prosecuted the Patent for Xerox reside in this District. Doc. 89 at 15. Plaintiff insists that they would have knowledge about the Patent, its prosecution, and relevant prior art. Defendants counter that the Inventors are better resources for most of this, the Patent

13

itself contains much of this information, and that the history of prosecution is only relevant to inequitable conduct, which has not been alleged. Doc. 90 at 10.

The alleged infringers are primarily the Defendants. As stated earlier, all but Best Buy have all their relevant documents and party witnesses in the Northern District of California or further—in Asia. Plaintiff argues that Defendants have not sufficiently identified their party witnesses or their proposed testimony, but, with the exception of Best Buy, Defendants respond that practically, if not actually, every party witness regarding the infringing products would come from California or Asia. Doc. 80 at 5; Doc. 90 at 5. Further, Defendants assert that third parties supply the allegedly infringing LEDs that are in Defendants' televisions and monitors, and those third parties will have significant amounts of relevant documents and testimony. This is pertinent because Defendants declare that almost all of their LED suppliers are, or will turn out to be, from Asia.[11] One confirmed supplier is Nichia, which is currently engaged in the Related Litigation with Plaintiff in the Northern District of California. Thus, considering that, "in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer[s]," much of the relevant evidence, and associated witnesses, will likely be found in the Northern District of California and Asia. In re Genetech, Inc., 556 F.3d 1338, 1345 (Fed. Cir. 2009). It cannot be reasonably disputed that procuring the attendance of these inevitable witnesses, some party and some non-party, will be significantly less expensive, and significantly more convenient, in the Northern District of California, even if they would be otherwise willing to travel across two continents to this District.

The enforcers are Plaintiff and its witnesses. Plaintiff has asserted that its five employees have knowledge about the patent, and has indicated that a couple would testify. However, since

---

[11] Defendants are not certain where the allegedly LEDs in their products come from—the component sourcing is not even done by LGE itself. See generally Docs. 73, 80. However, they assert that the vast majority, if not all, of the components come from Asia. Id.

14

Plaintiff is already litigating the same Patent in the Northern District of California, any inconvenience they would otherwise suffer is greatly mitigated.

The last group is licensees: Employees of Xerox Corporation of Connecticut and Thomson Licensing of New Jersey. Plaintiff raises this example of witnesses that may be relevant to this case and reside closer to this District than the Northern District of California. Doc. 89 at 14. Plaintiff asserts that they are relevant because they have already been deposed in the Related Litigation. Id. However, Defendants make clear that the relevance of testimony from these third parties is only in relation to Nichia's motion challenging Plaintiff's standing to enforce the Patent. Doc. 90 at 10. Further, Plaintiff's argument is illogical: the depositions occurred in the third parties' home states; if this suit is kept in this District, Defendants may need to depose these deponents again, but because those entities reside outside of this Court's subpoena power also, the depositions will again have to be conducted in those third parties' home states. If, however, these actions are transferred to the Northern District of California and consolidated with the ongoing case there, and if Defendants make Xerox and Thomson Licensing's testimony relevant by raising claims that require it, and if they decide not to rely on Nichia's depositions, then those third parties would simply be deposed again in their home states. Only to the extent that the licensees were needed for an actual hearing would this District be more convenient than the Northern District of California.

Accordingly, after considering all party and non-party witnesses, the Court **FINDS** that this factor weighs in favor of transfer.

### 4. The Interests of Justice

In evaluating whether the interest of justice weighs in favor of transfer, the Court looks to "the public interest factors aimed at systemic integrity and fairness." Heinz Kettler, 750 F. Supp.

2d at 669-70 (quoting Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." Id. Similarly, "[f]airness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Id.

Here, first, Plaintiff is currently a party to a case in the Northern District of California asserting the '557 Patent that is at issue in this case. See Bluestone Innovations LLC v. Epistar Corp. et al., Case No. 3:12cv-00059-SI (N.D. Cal. filed May 26, 2010). Defendants argue this case will necessarily involve many of the same issues regarding validity, claim construction, and even infringement. Doc. 90 at 10. Running a parallel case here would be unnecessarily duplicative—a waste of judicial resources. Defendants assert that the Related Litigation is ready to be joined as the first case management conference has been held and discovery has only recently started. Doc. 82 at 3. Plaintiff's only response to this is that the Northern District of California has denied a previous consolidation motion regarding other patent cases that Plaintiff brought in that District; however, Defendants point out that the denied motion involved "different Bluestone entities asserting different patents against mostly different defendants." Doc. 90 at 11. If these cases are transferred and considered for consolidation, it would be the same Bluestone entity asserting the same patent against these Defendants, which are already consolidated, and a defendant that is a supplier to one of the consolidated Defendants—Nichia.

Defendants cite the Northern District of California's rule on the issue, which this Court agrees, would likely result in the consolidation of the actions. Id.[12]

Second, and perhaps the singularly most important factor in this analysis, trying these cases separately creates the serious risk of inconsistent results. Not only would two courts be constructing the claims of the same Patent, but one would be determining whether a supplier, Nichia, infringed the Patent by making LEDs used in televisions and monitors while this Court would be determining separately whether a seller of televisions and monitors, LGE, infringed the Patent by selling devices with LEDs provided by Nichia. Even if this were the only factor in favor of transfer it might be sufficiently weighty to justify transferring these actions to the Northern District of California.

Third, docket congestion appears to be neutral in this case. Neither party has indicated that one court has a disproportionate case burden compared to the other. It is true that this District resolves cases more quickly than does the Northern District of California,[13] but "the speed of a district's docket is not decisive, and a comparison of docket conditions yields only slight weight for or against transfer in a §1404(a) analysis." VS Techs., No. 2:11cv43, slip op. at 12; see also Cognitronics Imaging Sys., Inc. v. Recognition, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) ("The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner."). Thus, this factor is neutral.

Finally, the remaining factors appear to be irrelevant to this case. Patent disputes are not a local controversy that could be said to unfairly burden jurors in any jurisdiction. See Lycos, Inc.,

---

[12] The rule provides: "An action is related to another when: [] The actions concern substantially the same parties, property, transaction, or event; and [] [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." N.D. Cal. Local Rule 3-12(a).
[13] This Court averages eleven (11) months to resolve a case compared to the Northern District of California's thirty-two and seven tenths (32.7) months. Doc. 89 at 22, Ex. O.

499 F. Supp. 2d at 696. All federal courts are presumed to be equally knowledgeable regarding matters of federal law. Byerson, 467 F. Supp. 2d at 635 (citing 15 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 at 469); see also BHP Int'l Inv., Inc. v. Online Exch., Inc., 105 F. Supp. 2d. 493, 498 (E.D. Va. 2000) (specifying that this factor is limited to diversity cases, which involve the application of state law). Lastly, the parties have alerted the Court to no potential conflicts of law. See Lycos, 499 F. Supp. 2d at 696.

\* \* \*

Accordingly, the Court **FINDS** that, on balance, the interest of justice factors weigh heavily in favor of transfer to the Northern District of California.

### IV. CONCLUSION

In summation, because (1) this suit could have originally been brought in the Northern District of California, (2) Plaintiff's choice of its home forum is entitled to less deference due to the lack of a nexus between the cause of action and this District, and (3) the remaining factors, especially the interest of justice in avoiding duplicative efforts and inconsistent results, overwhelmingly favor transfer to the Northern District of California, Defendants' Motions, Docs. 73 and 81, are **GRANTED**, and these actions are **ORDERED TRANSFERRED** to the Northern District of California.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: April 12, 2013